# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CORNUCOPIA INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-2252 (ABJ) |
| | ) | |
| AGRICULTURAL MARKETING SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Cornucopia Institute ("Cornucopia") has filed a motion for an award of attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d) and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E)(i). Pl.'s Mot. for Attys.' Fees & Costs [Dkt. # 14] ("Pl.'s Mot."). Plaintiff seeks an award of $41,543.65 in attorneys' fees and $422.08 in costs, for a total of $41,965.73. Pl.'s Reply in Supp. of Pl.'s Mot. [Dkt. # 17] ("Pl.'s Reply") at 12–13. Defendant Agricultural Marketing Service maintains that plaintiff is neither eligible for nor entitled to a fee award under FOIA, and that the amount plaintiff seeks is unreasonable. Def.'s Opp. to Pl.'s Mot. [Dkt. # 16] ("Def.'s Opp.") at 1.

The Court finds that plaintiff is eligible for and entitled to some fee award under FOIA. But because the portion of "fees-on-fees" work greatly exceeds the time spent on the merits of the underlying FOIA litigation, and because the litigation over a relatively narrow set of materials was uncomplicated and quickly resolved, the Court will grant $9,723.75 for attorneys' fees, $2,000.00 for fees-on-fees, and $422.08 in costs for a total of $12,145.83.

## BACKGROUND

Plaintiff Cornucopia is a non-profit organization with a "strong interest in ensuring the integrity of our nation's organic certification process." Decl. of Will Fantle [Dkt. # 14-3] ("Fantle Decl.") ¶ 5. Defendant, Agricultural Marketing Service ("AMS"), is a federal agency within the United States Department of Agriculture ("USDA") that administers the National Organic Program, which develops national standards for organic agricultural products. Def.'s Opp. at 1.

On April 4, 2016, USDA announced five vacancies on the National Organic Standards Board ("Board"), a 15-member board that advises the Secretary of Agriculture on organic policy and standards. Fantle Decl. ¶ 10. AMS oversees the Board. On June 10, 2016, plaintiff sent a FOIA request to AMS for "all applications submitted for vacancies open on the National Organic Standards Board (NOSB) as announced on April 4, 2016 by the USDA." Ex. 7 to Fantle Decl. [Dkt. # 14-3] ("FOIA Request").

Defendant replied on July 11, 2016, that it had identified 671 pages of responsive records but that "all of these documents [were] being withheld in their entirety pursuant to FOIA Exemptions (b)(5) and (b)(6)." Ex. 8 to Fantle Decl. [Dkt. # 14-3] ("Initial Response"). The agency explained that Exemption (b)(5) protects "pre-decisional and/or deliberative" records which are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than in litigation with the agency." *Id.*, quoting 5 U.S.C. § 552(b)(5). Because "the requested applications [were] still under review within USDA," defendant argued that Exemption (b)(5) was applicable. *Id.* The agency also asserted that the information was protected under Exemption (b)(6) because the requested applications contained information similar to personnel information, and disclosure "would constitute a clearly unwarranted invasion of personal privacy." *Id.,* 5 U.S.C. § 552(b)(6).

Plaintiff administratively appealed the agency's decision on August 3, 2016, arguing that "the USDA AMS [had] improperly applied FOIA exemptions (b)(5) and (b)(6) in an overly broad manner" in violation of "FOIA's express segregability requirement." Ex. 1 to Decl. of Gregory Bridges [Dkt. # 16–2] ("Pl.'s Admin. Appeal"). On September 2, 2016, the agency denied plaintiff's appeal, affirming its use of Exemption (b)(5) and (b)(6) and re-stating that the "requested applications [were] still under review within USDA." Ex. 9 to Fantle Decl. [Dkt. # 14-3] ("Final Response").

On November 14, 2016, plaintiff filed a complaint with this Court seeking declaratory and injunctive relief in order to obtain the records. Compl. [Dkt. # 1]. Two days later, on November 16, 2016, the USDA issued a press release officially announcing the appointments of five new members to the Board. Ex. 2 to Decl. of Gregory Bridges [Dkt. # 16-3] ("USDA press release").

After discussions between the parties, defendant concluded on December 16, 2016, that "Exemption 5 was no longer applicable" because the recent appointments marked the end of its application process, and it provided plaintiff with the responsive records. Def.'s Opp. at 3; Ex. 10 to Fantle Decl. [Dkt. # 14-3] ("Letter Releasing Records"). Of the 671 pages produced, 407 pages contained redactions of personal information (i.e. "social security numbers, personal email addresses, residential mailing addresses . . . telephone numbers, birth dates, places of birth, and other personal information which pertains to an applicant's personal finances, criminal history, race, and ethnicity") pursuant to Exemption 6. *Id.* The remaining 264 pages were released in full. *Id.* With respect to the five applicants appointed to the Board, the agency decided to partially waive Exemption 6 in order to release additional personal information regarding their outside income and judgments against them, because it concluded that the "public interest in certain components of their applications outweighed their privacy interest . . . ." *Id.*

3

After the initial December 16 production, the parties continued to have discussions over the release of any remaining responsive documents. On March 6, 2017, defendant decided to release additional information. Ex. 11 to Fantle Decl. [Dkt. # 14-3] ("Letter Releasing More Records"). Specifically, the agency reversed its position on Exemption 6 and agreed to unredact the state of residence for each applicant. *Id.* Then on March 9, 2017, defendant provided plaintiff with "several pages" of responsive records it had inadvertently omitted. Def.'s Opp. at 3. And on March 29, 2017, at plaintiff's request, defendant corrected a redaction error on one previously produced page. Decl. of C. Peter Sorenson [Dkt. # 14-4] ("Sorenson Decl.") ¶ 13.

The parties notified the Court on April 12, 2017, that "the release of responsive records [had] been completed" and requested a stay until May 12, 2017, "to complete their discussion regarding reasonable fees and costs." Joint Mot. to Stay [Dkt. # 8] ("Mot. to Stay"). There was no briefing in this case following plaintiff's complaint due to the willingness of the parties to resolve the FOIA dispute among themselves.

On June 14, 2017, the case was referred to a Magistrate Judge to conduct mediation concerning attorneys' fees and costs. The parties were unable to reach an agreement, so on August 18, 2017, plaintiff filed the pending motion for attorneys' fees. Pl.'s Mot. Defendant filed its response on September 20, 2017, Def.'s Opp., and plaintiff filed its reply on October 16, 2017. Pl.'s Reply.

**ANALYSIS**

Courts "may assess against the United States reasonable and other litigation costs reasonably incurred" in any FOIA case where "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). In order to recover fees and costs, a FOIA plaintiff must show first that it is eligible, and second, that it is entitled to such an award. *Brayton v. Office of the U.S.*

*Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011), citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006). Under the eligibility prong, a court "asks whether a plaintiff has substantially prevailed and thus may receive fees." *Id.* To substantially prevail, the complainant must show that it has "obtained relief" through either a judicial order or "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii); *see also Brayton*, 641 F.3d at 525 ("[T]he OPEN Government Act of 2007 . . . revived the possibility of FOIA fee awards in the absence of a court decree.").

If the requester is eligible for a fee award, the Court "proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Brayton*, 641 F.3d at 524, citing *Judicial Watch*, 470 F.3d at 369 (emphasis in original). A court must consider a number of factors in determining entitlement: "1) the public benefit derived from the case; 2) the commercial benefit to the requester; 3) the nature of the requester's interest in the information, and 4) the reasonableness of the agency's conduct." *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013). "No one factor is dispositive," *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008), but "the rule remains that if the government was 'correct as a matter of law' to refuse a FOIA request, 'that will be dispositive.'" *Brayton*, 641 F.3d at 525, quoting *Davy*, 550 F.3d at 1162.

### A. Plaintiff is eligible for attorneys' fees.

A plaintiff has "substantially prevailed" in a FOIA action, and becomes eligible for a fee award under the statute, if it "obtained relief through either – (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Plaintiff claims eligibility under subsection (II), on the grounds that its lawsuit caused defendant to change

5

its position twice and to release responsive records that were previously denied in the administrative appeal. Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 14-6] ("Pl.'s Mem.") at 6–7.

"The D.C. Circuit has long employed a 'catalyst theory,' which evaluates whether a plaintiff has substantially prevailed based on whether he or she 'substantially caused the government to release the requested documents before the final judgment.'" *Dorsen v. SEC*, 15 F. Supp. 3d 112, 118 (D.D.C. 2014), quoting *Brayton*, 641 F.3d at 524–25; *see Weisberg v. DOJ*, 745 F.2d 1476, 1496 (D.C. Cir. 1984) ("It is well established in this circuit that this inquiry is largely a question of causation."). Ultimately, plaintiff has the burden of proving "a causal nexus exists between" its suit and "the agency's surrender of that information." *Weisberg*, 745 F.2d at 1496, quoting *Cox v. DOJ,* 601 F.2d 1, 6 (D.C. Cir. 1979); *see also Pub. Citizen Health Research Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990) ("[C]laimant must show that it is more probable than not that the government would not have performed the desired act absent the lawsuit."). Thus, it follows that "[w]hen disclosure is triggered by events unrelated to the pending lawsuit, the causal nexus is missing and the plaintiff cannot be deemed a 'prevailing party.'" *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016), quoting *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 83 F. Supp. 3d 297, 303 (D.D.C. 2015), overruled on other grounds by Nat'l Sec. Counselors v. CIA*, 811 F.3d 22, 29 (D.C. Cir. 2016).

Here, defendant claims that the causation requirement is not met because it was the Board appointments, and not the lawsuit, that served as the catalyst for the release of the bulk of the records. Def.'s Opp. at 7. The agency argues that once the appointments were announced on November 16, 2016, it concluded that Exemption 5 pertaining to pre-decisional and deliberative

records no longer applied, and consequently it released 671 responsive pages a month later, on December 16, 2016. *Id.* at 3, 7–8.

This is a close question. It is clear that the change in circumstances played some role in the agency's change of position. But it is also true that the change came shortly after plaintiff filed its lawsuit, and while communications between the parties were underway. *See* Def.'s Opp. at 3. Therefore, while it cannot be said that the filing of the lawsuit was the sole basis for the agency's change in position, there was a substantial causal connection.

Moreover, the abandonment of Exemption 5 was not the only change. The agency agreed to partially waive Exemption 6 as to the five appointees' personal information on "outside income and judgments" because it found that the "public interest in certain components of their applications outweighed their privacy interest in the information." Letter Releasing Records. To the extent that the lawsuit gave voice to the public's interest in this information, the Court finds that it played a role in the agency's decision to disclose that information.

Finally, defendant acknowledges that the lawsuit played a role when it stated that it made its second revised production on March 6, 2017, "in an effort to resolve the lawsuit." Def.'s Opp. at 8. Defendant characterizes the second revised production as "insubstantial" under 5 U.S.C. § 552(a)(4)(E)(ii): a "singular decision to release the state of residence of applicants" constituting "nothing more than a minor adjustment to a redacted set of material." *Id.* But the Court is not relying on these additional limited disclosures alone for its determination. In any event, the geographic makeup of the applicant pool is not entirely insignificant, and plaintiff claims that the records it obtained allegedly revealed a "geographic bias." Pl.'s Mem. at 8. Also, on March 9, 2017, after months of negotiations, defendant produced "several" additional pages that it had inadvertently missed in its prior searches. Def.'s Opp. at 3.

7

Based on all of those circumstances, the Court finds that the lawsuit did in fact prompt the release of responsive records. Accordingly, the Court finds that the plaintiff substantially prevailed in this case and is therefore eligible for an award of attorneys' fees.

**B.     Plaintiff is entitled to attorneys' fees.**

If a plaintiff is "eligible" for a fee award, the court next determines whether the plaintiff also is "entitled" to an award. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 820 F. Supp. 2d 39, 45 (D.D.C. 2011). In evaluating this issue, courts consider four factors: "1) the public benefit derived from the case; 2) the commercial benefit to the requester; 3) the nature of the requester's interest in the information, and 4) the reasonableness of the agency's conduct." *Morley*, 719 F.3d at 690. None of the factors are dispositive, although "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Davy*, 550 F.3d at 1159.

To assess the public benefit derived from the case, the Court must consider "both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Id*. The public benefit factor weighs in favor of granting attorneys' fees "where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995), quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979).

As already discussed, the litigation spurred the agency to produce responsive records. And as to the "potential public value" of the information the Court agrees with plaintiff that the documents add to the public knowledge, albeit to a limited degree. While there is a genuine public interest in monitoring the nation's administration and enforcement of organic standards in agricultural products, plaintiff's FOIA request is somewhat indirectly related since it narrowly

sought the information of applicants to the National Organic Standards Board as announced in April 2016. Nonetheless, the Court agrees that the "the backgrounds of persons appointed to the NOSB, as well as persons who sought appointment to the NOSB," a 15-member board that advises the Secretary of Agriculture on organic policy and standards, is relevant to the broader goal of monitoring the administration and enforcement of organic standards. Fantle Decl. ¶¶ 23–24. Accordingly, the Court finds that this first prong favors plaintiff.

The second and third factors – the commercial benefit of the request and plaintiff's interest – are "often considered together." *Tax Analysts v. DOJ*, 965 F.2d 1092, 1095 (D.C. Cir. 1992), *superseded by statute on other grounds*. These factors weigh against an award where the plaintiff "seeks disclosure for a commercial benefit or out of other personal motives." *Id*. The factors tend to "favor non-profit organizations . . . which 'aim to ferret out and make public worthwhile, previously unknown government information – precisely the activity that FOIA's fees provision seeks to promote.'" *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.,* 999 F. Supp. 2d 61, 69 (D.D.C. 2013), quoting *Davy*, 550 F.3d at 1160.

Plaintiff is a non-profit public interest organization, Compl. ¶ 4, that sought documents from defendant "for public informational purposes" only and did not derive a commercial benefit. *Elec. Privacy Info. Ctr.*, 999 F. Supp. 2d at 69, quoting *Davy*, 550 F.3d at 1160. Plaintiff asserts that it plans to the use the information by "summarizing it, posting it on [their] website, and sharing it with [their] members, the organic community at large and the media." Fantle Decl. ¶ 24. Thus, the Court finds that the second and third factors favor plaintiff. *See, e.g., Citizens for Responsibility & Ethics in Wash.*, 820 F. Supp. 2d at 45 (ruling that a non-profit plaintiff that "gathers information of potential interest to a segment of the public, uses [its] editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience" is "among

9

those whom Congress intended to be favorably treaded under FOIA's fee provision") (alteration in original), quoting *Davy*, 550 F.3d at 1161–62.

Finally, under the fourth factor, the Court assesses "whether the agency's opposition to disclosure had a reasonable basis in law" and "whether the agency . . . [was] recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162 (citations and quotations omitted). The government's decision to withhold information may have a reasonable basis in law even if the information was ultimately not found to be exempt. *See Negley v. FBI*, 818 F. Supp. 2d 69, 76 (D.D.C. 2011), citing *Fenster*, 617 F.2d at 744. If the government's withholding is correct as a matter of law, there are no grounds on which to award fees. *Davy*, 550 F.3d at 1162. However, if the government's withholding of documents is "founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." *Id.*, quoting *Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993).

Here, defendant initially declined to release any information related to plaintiff's FOIA request because it claimed the information was protected under Exemption 5, since the applications were still under review at the time of the FOIA request, and under Exemption 6, because the applications contained personal information. *See* Initial Response; Final Response. This position certainly had a "colorable basis in law" and there is no evidence that the agency was recalcitrant or acted in bad faith. Indeed, the agency was able to resolve this request without the need for any legal briefing following plaintiff's complaint. Accordingly, because defendant's decision to initially withhold the records had a "reasonable basis in law," the fourth factor weighs in defendant's favor.

In sum, because three out of the four factors favor plaintiff, the Court finds that plaintiff is entitled to recover attorneys' fees.

**C.    Plaintiff's attorneys' fees are unreasonable.**

Upon determining that a plaintiff is both eligible for and entitled to a FOIA fee award, the Court must then determine whether the requested award is reasonable. *See* 5 U.S.C. § 552(a)(4)(E)(i) (providing for "*reasonable* attorney fees and other litigation costs") (emphasis added).

Plaintiff calculated its fee application using the *Laffey* rates.[1] Sorenson Decl. ¶¶ 9–10. It asks this Court to award fees for litigation costs, which it itemizes as $422.08 in costs, $30,708.65 in attorneys' fees for "preparation of complaint through Plaintiff's Motion for Attorney's Fees and Costs," and $10,835.00 for "fees on fees preparation of the Reply and accompanying documents" for a total of $41,965.73. Suppl. Decl. of C. Peter Sorenson [Dkt. # 17-1] ("Sorenson Suppl. Decl.") ¶ 8; *see also* Pl.'s Reply at 12–13. But this is a somewhat inaccurate effort to differentiate time spent on the merits from time spent recovering fees because the $30,000 plaintiff lists in the first category includes the hours expended drafting the fee petition. "While it is settled in this circuit that hours reasonably devoted to a request for fees are compensable, fees on fees must be reasonable, and not excessive." *Elec. Privacy Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 162 (D.D.C. 2015) (internal citations and edits omitted). This means the Court must "scrutinize" fees-on-fees

---

1    Attorneys' fees and costs are usually calculated by multiplying "the number of hours reasonably expended . . . by a reasonable hourly rate." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1323 (D.C. Cir. 1982). But in the case of public-interest lawyers, who do not have customary billing rates, courts in this Circuit frequently use the "*Laffey* Matrix" first set forth in *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984). The *Laffey* Matrix is a schedule of fees based on years of attorney experience. *Salazar ex rel. Salazar v. Dist. of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015).

petitions "to insure that the total . . . does not represent a windfall for the attorneys." *Id.*, citing *Boehner v. McDermott*, 541 F. Supp. 2d 310, 325 (D.D.C. 2008).

Here, the Court finds that the total fee request is unreasonable because an undue portion of it derives from time billed for litigating and mediating the amount of attorneys' fees, rather than the merits of the underlying FOIA action.[2] Furthermore, the merits themselves were resolved quickly in a straightforward manner, with no need for additional briefing, and, as noted above, the change in circumstances also played a role in the agency's decision to release the material.

On April 12, 2017, the parties moved to stay the case because "the release of responsive records [had] been completed" and they informed the Court that all that remained to be resolved was the issue of attorneys' fees. Mot. to Stay. After April 12, 2017, plaintiff billed $29,000.10 for its work on fee matters alone. *See* Ex. 2 to Sorenson Decl. [Dkt. # 14-4] ("Time Records") at lines 70–149; *see also* Ex. A to Sorenson Suppl. Decl. [Dkt. # 17-1] ("Suppl. Time Records"). This amount accounts for approximately 70% of the total fee request. Moreover, defendant argues that much of the time plaintiff billed was unnecessary and redundant, pointing to such line items as time spent drafting an unsuccessful settlement agreement and numerous duplicative consultation emails and telephone calls. Def.'s Opp. at 12.

---

2   Plaintiff did not provide the Court with a figure totaling its fees-on-fees request. In its reply brief in support of its motion, plaintiff indicates that a $10,835.00 amount relates to "*additional* fees-on-fees for time spent preparing [its] Reply" but it did not indicate how much of the prior $30,708.65 bill should also be attributed to fees-on-fees work. Pl.'s Reply at 12–13 (emphasis added). Because plaintiff's entries after April 12, 2017, relate to its efforts to obtain attorneys' fees through mediation and litigation, the Court will treat them as part of plaintiff's requested fees-on-fees award in the amount of $29,000.10. *See* Ex. 2 to Sorenson Decl. [Dkt. # 14-4] ("Time Records") at lines 70–149; Ex. A to Sorenson Suppl. Decl. [Dkt. # 17-1] ("Suppl. Time Records"); *see, e.g., Elec. Privacy Info. Ctr. v. FBI*, 80 F. Supp. 3d at 161–62 (ruling that legal work billed after the underlying FOIA request was completed should be treated as plaintiff's requested fees-on-fees award).

The Court finds that granting plaintiff a $29,000.00 fees-on-fees award would constitute an unsupportable windfall. *See, e.g., Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 959 (D.C. Cir. 2017) (noting that fee petition was excessive in part because time spent on fee litigation "easily exceeded" work on the underlying claim). Rather than perform an "item-by-item accounting" which is not required, *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980), the Court will reduce the fees-on-fees component of the fee award to $2,000.00.

Turning to the time billed for the merits, the Court finds that once it subtracts plaintiff's work on fees from the total amount claimed, plaintiff seeks $12,965.63 for time billed for the merits. This too appears to be excessive. The parties were able to resolve the FOIA request within six months from the date plaintiff filed its suit and without any briefing. There was also nothing particularly complex about the narrow FOIA request. *See* Mot. to Stay; *see also* Time Records at lines 1–69 (documenting mostly emails and telephone calls). Therefore, the Court will reduce the award for time billed on the merits by 25% and will award $9,723.75.

In sum, the Court will grant plaintiff's motion for attorneys' fees and costs and it will award $11,723.75 for attorneys' fees and $422.08 in costs for a total of $12,145.83.

/s/ Amy B. Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: January 10, 2018